No. 20,314.

ROBERT M. KNOLL *v.* SCHOOL DISTRICT No. 10 R-JOINT
OF COLORADO.
(390 P. [2d] 310)

Decided March 16, 1964.

Messrs. WATTS & WATTS, for plaintiff in error.

Mr. A. M. EMIGH, for defendant in error.

*In Department.*

Opinion by MR. CHIEF JUSTICE McWILLIAMS.

KNOLL brought a breach of contract action against the School District, alleging that on December 10, 1958, the School District "did wrongfully dismiss the plaintiff without good cause and without giving him notice, trial or hearing" and he accordingly prayed for judgment in the amount of $3,150.

The School District by answer denied that it either "dismissed" or "discharged" Knoll on December 10, 1958, and affirmatively alleged that on said date it "suspended" him and at the same time "offered" to hold a full scale hearing, if Knoll desired such, in connection with certain accusations of classroom misconduct on the part of Knoll. The School District then went on to aver that Knoll did not thereafter indicate whether he desired a hearing and that on January 19, 1959, the School District, acting on its own initiative, "caused notice to be given plaintiff that a hearing . . . would be conducted by the board of directors of the defendant School District on January 31, 1959." Finally, it was alleged that such a hearing was in fact held on January 31, 1959, and that as a result of the evidence adduced at such hearing Knoll was discharged "on the ground that plaintiff had by his own conduct breached his contract." In its answer the School District conceded that it was legally obligated to Knoll for his regular monthly salary through January 31, 1959, but denied any further or additional liability.

Upon trial the court found that Knoll was not discharged on December 10, 1958, but only "suspended," and that after hearing he was on January 31, 1959, discharged for good cause. The court entered judgment for Knoll against the School District in the amount of

$1,159.35, this sum representing his salary through January 31, 1959. By writ of error Knoll now seeks reversal of the judgment thus entered.

The events giving rise to the present controversy are as follows:

1. On June 4, 1958, Knoll and the School District entered into a "Teacher's Contract" whereby Knoll was "employed to teach in the public school of said district for the period beginning 20 August, 1958 and ending June 30, 1959, at a salary of $4200 dollars per year, payable monthly . . .".

2. This particular teaching contract also provided that "no teacher shall be dismissed without good cause shown, which includes a hearing."

3. Pursuant to this contract Knoll then entered upon his teaching duties on August 20, 1958, and thereafter received his monthly salary through November 1958.

4. On December 10, 1958, Knoll appeared before the directors of the School District and was then informed that they had received numerous complaints of his misconduct in the classroom.

5. After having been verbally advised of the nature of such complaints with a considerable degree of specificity, Knoll said he was uncertain as to whether he desired a "formal hearing" and asked for time to consult an attorney.

6. Later on that same date, i.e. December 10, 1958, Knoll informed the School District that his attorney had advised him to appear in his classroom on December 11, 1958, prepared to teach unless specifically instructed not to so do.

7. A few hours later — still on December 10, 1958 — the School District in writing advised Knoll that it had "no alternative except to suspend you from your teaching assignments effective this date" because of "certain accusations made by certain students."

8. In this "letter of suspension" the School District went on to state, among other things, that "suspension

is demanded until such time as the accusations are either proven or disproven or some other solution to the problem is found."

9. Knoll did not thereafter teach or perform any duties for the School District, though the district tendered Knoll his monthly salary for December 1958 and January 1959, which tenders Knoll in turn refused.

10. On January 19, 1959, the School District formally notified Knoll that it would hold a hearing on January 31, 1959, into a "petition requesting that you be discharged," a copy of said "petition" being attached to the notice.

11. A hearing was held on January 31, 1959, at which time and place Knoll did not appear, though his attorney did appear and advised the School District that it was Knoll's position that the proposed hearing was a nullity, inasmuch as Knoll had already been "discharged" on December 10, 1958, without hearing.

12. Upon the conclusion of this hearing the School District proceeded to "discharge" Knoll, said discharge being "based upon the charges made in the hearing of that date" and authorized payment of Knoll's teaching salary through January 1959.

C.R.S. '53, 123-17-1 provides that "[N]o teacher shall be dismissed without good cause shown . . . ." and this Court has on numerous occasions held that "good cause shown means specific accusation, notice, evidence before the board in its official capacity and an opportunity to the teacher to be heard and refute the charge." See *School District v. Shuck,* 49 Colo. 526, 113 P. 511; *School District v. Mort,* 115 Colo. 571, 176 P. (2d) 984; and *School District v. Thomas,* 147 Colo. 348, 363 P. (2d) 700. In the instant case the contract of employment expressly provides that Knoll may not be "dismissed without good cause shown, which includes a hearing."

Knoll does not challenge the sufficiency of the proceedings before the School District's board on January 31, 1959, as such. In other words, he concedes that he

had notice of the hearing, the nature of the charges against him, and that he did in fact have the opportunity "to be heard and refute the charges." Nor does he contend that "good cause" for his dismissal was not shown at said hearing.

Rather, Knoll's position is that having already been "discharged" without a hearing on December 10, 1958, the subsequent hearing held on January 31, 1959, was a nullity and a meaningless gesture, of the face-saving variety, on the part of the School District.

Hence the issue narrows down to a determination as to whether Knoll was in fact discharged from his teaching position on December 10, 1958. In this regard upon trial Knoll testified that he at least considered himself "discharged" from his teaching position with the School District on December 10, 1958, when he was instructed not to appear in the classroom on the following day. The several members of the board of the School District, as well as the school superintendent, testified however that Knoll was not "discharged" on December 10, 1958, but only "suspended" until such time as the accusations then pending against Knoll could be proved or disproved after hearing, and further that though Knoll was temporarily barred from the classroom, he was nevertheless still considered to be an employee of the School District and hence was kept on the payroll. Based on this conflicting testimony as to just what was said and done on December 10, 1958, the trial court found as a matter of fact that Knoll was not discharged as of that date, only suspended.

Recognizing that the finding of a trial court on a disputed issue of fact is binding on this Court, Knoll argues that notwithstanding the fact that the School District may have used the word "suspended" rather than "discharged" in connection with its action on December 10, 1958, nevertheless he was in reality discharged on that date. In this connection it is his position that when the school board forbade him to appear in

the classroom on December 11, 1958, he was as a matter of law discharged. In support of this contention Knoll cites *School District No. 1 v. Parker,* 82 Colo. 385, 260 P. 521, where we said: "the refusal by the defendant to allow plaintiff to perform the duties required by her employment amounted to her dismissal from such employment."

In our view the *Parker* case is readily distinguishable from the instant one inasmuch as the material facts and circumstances in that case are so markedly dissimilar to those as disclosed in the present record. In the *Parker* case the evidence quite clearly indicated that the refusal of the School District to permit Parker to enter the classroom and perform her teaching duties was unconditional and permanent in nature and under these circumstances clearly justified the conclusion that Parker had been discharged. In the instant case, however, the evidence is equally clear that in barring Knoll from the classroom it was most certainly not the intent of the School District to discharge him, but only to temporarily suspend him, with pay, until such time as a formal hearing could be held.

Further, in the *Parker* case, where the School District never held any hearing whatsoever, this Court very carefully pointed out that it "did not want to be understood as saying that the conduct of the plaintiff . . . would not constitute sufficient ground for the filing of a charge against her and for dismissal . . . *upon hearing.*" (Emphasis supplied.)

It is abundantly clear that on December 10, 1958, the School District did by written notice to Knoll temporarily suspend him, with pay, until a hearing could be held concerning charges of misconduct on the part of Knoll. We find nothing in the teaching contract itself, nor in our statutory law, to prohibit the action taken by the School District under the circumstances disclosed.

In short, there is ample evidence to support the finding of the trial court that Knoll was "suspended," not

"discharged," from his teaching position on December 10, 1958. The judgment is therefore affirmed.

MR. JUSTICE HALL and MR. JUSTICE DAY concur.